Judge Green
delivered his opinion.*
This case comes up by supersedeas to a judgment by default for want of appearance, which was made final in the office without the execution of a writ of enquiry. The suit was in the name of the President and Directors of the Conococheague Bank, assignees of Jesse Payne, who was assignee of H. Payne, upon a promissory note dated at Williamsport, payable and negotiable at the Conococheague Bank. The declaration alleges, that it was made and assigned in succession by J. Payne and II. Payne at the Conococheague Bank, with a scilicet laying the venue in Berkeley county, where the action was brought. The judgment was entered against the defendant Rees (the drawer of the note) and the bail for his appearance.
Several objections were made in the argument of the cause to this judgment. First, that there is no averment in the declaration, that the Conococheague Bank is a cor-' poration duly constituted, or that “the President and Directors of the Conococheague Bank” are authorised by law"to sue in that name. Secondly, that the endorsements being in blank and not yet filled up, vested no title in the *329 plaintiffs. And thirdly, that the judgment was given without regard to a credit endorsed upon the protest filed with the note.
As to the two first objections, I do not think they are well founded. A blank endorsement does not perse transfer a title, but is an authority to the holder, either to hold it as the agent of the endorser, or to claim it as his own by assignment, at his election, without any further act to be done by the assignor. The blank endorsement is conclusive proof of the assent of the endorser to transfer the note to the holder, if he elects to take it as a transfer. The assent and election of the holder to treat the endorsement as a transfer, is proved as well by suing upon it in his own name, as by writing over it an assignment to himself; and it is the assent of both parties to the transfer, which perfects it, and not the form in which that assent is evidenced. The possibility that the note might be withdrawn and again put in circulation, has no influence upon the question. The defendant could not thereby be injured; for, even if it were commercial paper, being past due, the new holder would take it subject to all objections.
It was decided in the Case of the Bank of Marietta v. Pindall, 2 Rand. 465, that a foreign corporation may sue in our Courts upon a contract with them, valid according to the laws of the country in which the contract was made; unless it was contrary to the policy of our laws; and that the making a note in Virginia to be negotiated at a foreign bank is not liable to this objection.
Whether the Bank of Conococheague is an incorporated hank or not, or whether they have a legal right to sue in the name of the if President and Directors” only, ai;e questions which might have been put in issue by the defendant, or raised upon the trial of the general issue. No averments as to those subjects were necessary in the declaration. In order to maintain their action, it would have been necessary to prove, if the defendant had appeared and pleaded, that they were incorporated, and legally empowered to *330 make the contract under which they claim, and to sue in manner in which this suit is brought. If they failed to shew that they were incorporated, their action could n°t be maintained. For, it is contrary to the act of 1805, re'enacte in 1819, Rev. Code, ch. 207, sec. 2, to circulate any note payable to bearer or any other person, emitted by any banking company not having a charter, whether that company exists in Virginia or elsewhere. If such an unchartered company existing in a foreign country could, by the laws of the country, contract and sue in the names of their agents, it would be contrary to the policy of our laws for our citizens to procure their notes, to be there discounted; since it would tend to violate the law, by encouraging the circulation of their notes here. That private corporations may sue, without alleging their charter of incorporation, although the Courts cannot ex officio take notice whether they are or are not incorporated; and that the question whether they are a legal corporation or not, and have a right to sue in the name used;—are proper to be put in issue by the defendant’s plea, or enquired into upon the general issue, appears from the Case of The Mayor and Burgesses of Lynn Regis, 10 Co. Rep. 120; in which the declaration did not aver the existence of the corporation, but upon the trial of the general issue, their charter was produced, and the only question in the cause therefore arose, whether the bond and the suit brought upon it were in the proper legal name of the corporation.
The third objection is, I think, well taken. A final judgment, when no plea is filed, may be rendered in the office at rules, for principal and interest, when the action is founded upon any instrument in writing for the payment of an ascertained sum of money. But, if the plaintiffj by any paper filed by himself, shews that the defendant is entitled to a credit, the judgment ought either to be entered subject to such credit, or if the plaintiff refuses to take a judgment in that way, a writ of enquiry should be awarded. In this case, if it be doubtful whether the defendant is en *331 titled to the credit endorsed on the protest filed with the note, it was sufficient prima facie, evidence to prevent a judgment from being given for the whole sum, without a writ of enquiry.
It is objected, that this error cannot be taken advantage of here, because being a clerical error, it might and ought to have been corrected on motion in the Court below. If this be so, the plaintiff as well as the defendant had a right to have it corrected, and it was as much his fault as that of the defendant, that it was not; and not being corrected, the judgment is erroneous. Indeed, the plaintiff might have cured the error by releasing the amount of the credit endorsed upon the protest, if he admitted it to bo a credit. But he obviously contests this, hy his endorsement on the execution that Mr. Sexton’s check would be received in part payment to the amount of $ 548 2.5, the amount of the credit on the protest, deducting $ 1 75, which was the cost of the protest; which they intended to secure in this way, as it was not embraced in the judgment.
The judgment should be reversed, and the proceedings since the common order set aside, and the cause remanded, with directions to send it to the rules, to be there further proceeded in, and a writ of enquiry awarded.
The other Judges concurred, and judgment was entered accordingly.

 The President absent.